IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ARETHA WILEY                                                                                    PLAINTIFF

v.                                                        CIVIL ACTION NO. **3:24-cv-124-CWR-ASH**

CENTENE CORPORATION                                                                    DEFENDANT

**ORIGINAL COMPLAINT**
(Jury Trial Demanded)

Aretha Wiley, by and through counsel, presents her Original Complaint against Centene Corporation, as follows:

### I.  PARTIES

1.1  Aretha Wiley is an adult resident citizen of Hinds County, Mississippi.

1.2  Centene Corporation is incorporated in the State of Delaware and has its principal place of business in the State of Missouri.  Centene is registered to do business in Mississippi. Process may be issued on the Mississippi Insurance Commissioner, upon Centene's registered agent for service of process at C.T. Corporation System, 645 Lakeland East Drive, Ste 101, Flowood, Mississippi 39232, or in any other manner allowed under the Federal Rules of Civil Procedure.

### II.  JURISDICTION AND VENUE

2.1  This Court has federal question jurisdiction under Title VII of the Civil Rights Act, as Amended, and 42 U.S.C. § 1981 and supplemental jurisdiction over the state law claim.

2.2  Venue is proper in the Southern District of Mississippi, Northern Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the

Plaintiff's claims occurred in Hinds County, Mississippi, in the Southern District of Mississippi, Northern Division.

### III.   FACTS

3.1    Ms. Wiley started working for Centene on August 3, 2015 as a Supervisor. She shifted from Supervisor to Contract Negotiator on or around February 28, 2017.

3.2    In 2018, Ms. Wiley filed a charge with the Equal Employment Opportunity Office ("EEOC") alleging discrimination based on her race and sex. A copy of this Charge is attached as Exhibit A. Ms. Wiley alleged that a white male contract negotiator with less experience earned a higher salary than she did. Ms. Wiley engaged in a protected activity by filing this EEOC Charge. The EEOC closed its investigation of the 2018 Charge in 2020.

3.3    After Ms. Wiley filed the EEOC Charge and until her termination of employment, Ms. Wiley was excluded from meetings with management in which other contract negotiators were allowed to participate and prohibited from working on any lucrative contracts such as those with UMMC and St. Dominic's. Centene hired other employees with little to no experience. These employees were allowed to negotiate the more lucrative contracts and allowed to participate in meetings with management.

3.4    In March of 2020, due to the pandemic, Ms. Wiley began to work at home and became increasingly aware that she was being kept out of meetings with management due to her ability to see group meetings without her occurring via her computer.

3.5    Centene regularly evaluated Ms. Wiley's employment as "meets expectations" but repeatedly stated that she needed additional training to achieve higher job evaluations or be considered for a promotion. Centene denied Ms. Wiley the training that Centene said she needed to improve her job performance. She was further denied the right to participate in meetings with

management that would have aided in her professional development while other less experienced contract negotiators were allowed to do so.

3.6     In early 2022, Centene gave Ms. Wiley a 2% raise instead of a 3% raise. When Ms. Wiley questioned why she had not received a 3% raise, she received no explanation. Ms. Wiley also became aware that employees in the company were aware of her personal information that they should not have known, including that she had been diagnosed with cancer. She had told no one of this diagnosis, not even her family, and was questioned at work about her diagnosis. She began to notice that employees in the company were following her and that she was being followed to doctor's appointments. The pressure of being retaliated against and being excluded because of her protected activities had taken an enormous emotional toll on Ms. Wiley.

3.7     In April of 2022, Ms. Wiley filed a charge with the EEOC alleging that she was being retaliated against for filing the EEOC Charge in 2018. A copy of this charge is attached hereto as Exhibit B. For reasons currently unknown, Centene allegedly did not become aware of Ms. Wiley's EEOC Charge until late summer of 2023.

3.8     In August of 2023, while the EEOC was investigating the 2022 EEOC Charge, Ms. Wiley conferenced with members of Centene's Human Resources Department to discuss the allegations in her second EEOC Charge as part of Centene's investigation of those allegations. Ms. Wiley explained her good faith, subjective belief that she had been retaliated against for filing the EEOC Charge.

3.9     During the conference, Centene's HR Department, including Christie Silvey (HR Complaint and Audit Partner) questioned Ms. Wiley about her allegations in the second EEOC Charge that was still under investigation and Ms. Wiley responded. Ms. Wiley's EEOC Charge

and her statements made in connection with the investigation are protected activities under the participation clause.

3.10    After the meeting, Centene's HR Department emailed Ms. Wiley resources to address alleged mental health issues and for a leave of absence.  Ms. Wiley had not requested any such materials or mentioned the need to take a leave of absence.

3.11    On September 12, 2023, after the conference with Ms. Wiley, over a year after Ms. Wiley had filed her second EEOC Charge, Ms. Silvey on behalf of Centene filed Respondent's Position Statement with the EEOC and denied any discriminatory conduct.

3.12    After Ms. Wiley's meeting with HR to discuss the EEOC Charge, Ms. Wiley clocked into work every day per her normal work schedule.  On September 26, 2023, tech support froze Ms. Wiley's computer.  The message on the computer stated that the asset was frozen because it was assigned to a currently terminated employee.

3.13    Ms. Wiley kept trying to log in to the computer but was unable.  She called HR and informed HR that she had not been absent from work.

3.14    In October of 2023, Ms. Wiley received a letter from Centene stating that her employment was terminated due to job abandonment that allegedly had begun on September 20, 2023, shortly after Centene had become aware of the EEOC Charge and Ms. Wiley had met with HR to discuss her pending EEOC Charge.

3.15    Ms. Wiley did not abandon her job. She logged in to her computer every day as required, the same way she had for years.  Centene's stated reason for Ms. Wiley's employment termination, which is an adverse employment action, is pretext for employment discrimination.

3.16    Ms. Wiley received her right to sue letter from EEOC for her second EEOC Charge. A true and accurate copy is attached hereto as Exhibit C.

3.17 Ms. Wiley received her right to sue letter from EEOC for her third EEOC Charge. A true and accurate copy is attached hereto as Exhibit D.

## IV.     RETALIATION
### Title VII of the Civil Rights Act, as Amended

4.1 Ms. Wiley incorporates by reference the prior averments as if fully set forth herein.

4.2 Centene is a statutory employer under Title VII of the Civil Rights Act, as Amended. Ms. Wiley engaged in protected activities by filing the first and second EEOC Charges against Centene. Ms. Wiley also engaged in a protected activity by participating in Centene's investigation of the second charge.

4.3 Centene retaliated against Ms. Wiley by terminating her employment for engaging in protected activities, including participating in Centene's investigation of the second EEOC Charge. But/for Ms. Wiley's partaking in protected activities, Centene would not have terminated her employment.

4.4 As a result of Centene's outrageous and discriminatory conduct, Ms. Wiley has suffered damages and continues to suffer damages, both economic and non-economic.

## V.     RACE DISCRIMINATION
### Title VII of the Civil Rights Act, as Amended
### and Section 42 U.S.C. § 1981

5.1 Ms. Wiley incorporates by reference the prior averments as if fully set forth herein.

5.2 Ms. Wiley, black, is a member of a protected class. She was, at all times relevant to this case, qualified for her position and received positive performance evaluations. She had a contract with Centene under 42 USC Section 1981.

5.3 Ms. Wiley suffered an adverse employment action when Centene terminated her employment. But/for Plaintiff's race, Ms. Wiley would not have been terminated.

5.4   Centene replaced Ms. Wiley with someone outside the protected class, and other similarly situated employees engaged in similar conduct and were not terminated. Ms. Wiley also did not violate the alleged work rule for which Centene has stated it terminated Ms. Wiley's employment.

5.5   As a proximate result of Centene's discriminatory conduct, Ms. Wiley has suffered damages and continues to suffer damages, both economic and non-economic.

## VI.   DISABILITY DISCRIMINATION
### Americans with Disabilities Act, as Amended
### "Regarded as"

6.1   Ms. Wiley incorporates by reference the prior averments as if fully set forth herein.

6.2   Centene Corporation is a statutory employer under the Americans with Disabilities Act, as Amended.

6.3   Centene regarded Ms. Wiley as having a mental impairment that substantially limited her in the major life activities of working and thinking based on her reports of discrimination to the EEOC and Centene's investigation of her second EEOC Charge.

6.4   After Ms. Wiley met with Centene, HR representatives provided mental health and leave of absence literature to Ms. Wiley, showing that HR perceived Ms. Wiley as having major life limitations with her mental health, including paranoia.

6.5   Ms. Wiley has no such impairment but was treated by Centene as having a substantially limiting impairment. Less than two weeks after HR representatives sent this information to Ms. Wiley, Centene terminated Ms. Wiley's employment because it regarded her as disabled.

6.6   Ms. Wiley has suffered damages as a proximate result of Centene's discriminatory actions.

## VII. INFLICTION OF EMOTIONAL DISTRESS

7.1     Ms. Wiley incorporates the prior paragraphs as if fully set forth herein.

7.2     As a direct and foreseeable consequence of the actions described above, Ms. Wiley has suffered mental anguish and emotional distress. These actions were performed either intentionally in an effort to cause Ms. Wiley to sustain and experience emotional distress and anguish or with negligence and/or gross negligence that resulted in mental and emotional distress and anguish to Ms. Wiley. Ms. Wiley's mental distress and anguish are a result of Defendant's extreme and outrageous conduct.

## VIII.

## PUNITIVE DAMAGES

8.1     Ms. Wiley incorporates the prior paragraphs as if fully set forth herein.

8.2     Defendant's conduct towards Ms. Wiley as described herein demonstrates a willful and malicious wrong and gross and a reckless disregard for Ms. Wiley's rights.  It was so egregious that punitive damages should be assessed because of the totality of the circumstances of Defendant's conduct.

## IX.

## DAMAGES

9.1     **Lost Wages.** Ms. Wiley's lost wages, including back pay and front pay, and lost and future benefits since her termination.

9.2     **Loss of Earning Capacity.** Due to Defendants' conduct, Ms. Wiley's earning capacity has been diminished due to her inability to find work and the loss of opportunity to increase her salary and position in the workforce.

9.3     **Emotional Distress.** As a result of the malicious, intentional, outrageous, reckless, and unjust termination of Ms. Wiley by Defendant, Ms. Wiley has been damaged in her inability to get a comparable position and meet her obligations to her family and has been severely embarrassed in the industry she worked in. Ms. Wiley has suffered extreme emotional distress. Ms. Wiley is entitled to damages for emotional distress in an amount to be determined by the jury.

9.4     **Punitive Damages.** As a result of Defendant's intentional, willful, and malicious conduct and/or their gross and reckless disregard of Ms. Wiley's rights and in order to serve as an example and to prevent other such future conduct, Ms. Wiley is entitled to punitive damages against Defendant based on net worth and other factors as instructed by the Court in an amount to be determined by the jury.

**WHEREFORE, PREMISES CONSIDERED,** Ms. Wiley demands judgment against Defendant in this matter for back pay, front pay, emotional distress damages, compensatory and punitive damages, plus attorneys' fees, legal expenses, court costs, prejudgment interest, and post-judgment interest.  Ms. Wiley requests a jury trial.

This the 4th day of March, 2024.

                                                    ARETHA WILEY

                                                   By: */s/ E. Taylor Polk*
                                                          E. Taylor Polk

OF COUNSEL:
E. Taylor Polk (MSB No. 103653)
HEILMAN NISBETT POLK, P.A.
Meadowbrook Office Park
4266 I-55 North, Suite 106
Jackson, Mississippi 39211
Telephone: (601) 914-1025
Facsimile: (601) 944-2915
tpolk@hnplawyers.com