# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ARETHA WILEY,**

        *Plaintiff,*

v.

**CENTENE MANAGEMENT COMPANY, LLC,**

        *Defendant.*

CAUSE NO. 3:24-CV-124-CWR-ASH

## ORDER

Defendant filed a motion for summary judgment. Docket No. 35. The matter is fully briefed and ready for adjudication.[1] After reviewing the evidence, arguments, and applicable law, the Court determines that motion is due to be granted in part and denied in part.

## Background

This is an employment discrimination action. Plaintiff, Ms. Aretha Wiley, began working for Centene in August 2015. She began as a Supervisor for Referral Services and became a Contract Negotiator in February of 2017. At Centene, Contract Negotiators are salaried, exempt employees. Originally working in the office, Ms. Wiley transitioned to fully remote work at the beginning of the pandemic. Ms. Wiley worked remotely for Centene throughout 2023.

On September 17, 2018, Ms. Wiley filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming race discrimination, sex

---

[1] Defendant filed an unopposed motion, seeking an extension of time to file a reply in support of its motion for summary judgment. *See* Docket No. 40. Four days later, Defendant filed its reply. Docket No. 41. Defendant's request for an extension, Docket No. 40, is granted *nunc pro tunc*. The Court considered the reply in issuing this Order.

1

discrimination, retaliation, and Equal Pay Act violations. On April 18, 2022, Plaintiff filed a second EEOC Charge, alleging that Centene had her followed while at work prior to March 2020 and while on personal time, and that her phone had been "hacked." Centene, however, did not receive notice of the second EEOC Charge until August 18, 2023, because the EEOC's prior notices were sent to individuals no longer employed by Centene or to incorrect email addresses.

On August 25, 2023, Centene representatives met with Ms. Wiley to discuss the allegations in the Second EEOC Charge. On September 25, 2023, Centene sent Plaintiff a letter via FedEx and electronic mail to her personal email address, notifying Plaintiff that it considered her to have abandoned her job and terminating her employment. She filed her complaint to this Court in March of 2024.

**Legal Standard**

"Summary judgment is appropriate if the pleadings and evidence pointed out to the district court show no disputed material facts and that the movant is entitled to judgment as a matter of law." *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citation omitted). To determine whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citation omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence

of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "At the summary judgment stage, 'self-serving affidavits and depositions may create fact issues even if not supported by the rest of the record.'" *Pauliah v. Univ. of Miss. Med. Ctr.*, No. 3:23-CV-3113, 2025 U.S. Dist. LEXIS 208808, at *3 (S.D. Miss. Oct. 23, 2025) (quoting *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021)). Courts "do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quotation marks, emphasis, and citation omitted).

**Analysis**

Plaintiff brings six claims: (1) retaliation, under Title VII, (2) race discrimination, under Title VII, (3) race discrimination, under 42 U.S.C. § 1981, (4) disability discrimination, under the Americans with Disabilities Act ("ADA"), (5) Intentional Infliction of Emotional Distress, and (6) Negligent Infliction of Emotional Distress. The Court addresses these claims in turn.

    **1.**    **Retaliation**

The familiar *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation cases. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). For purposes of establishing prima facie case a "Title VII retaliation plaintiff must establish that: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quotation marks and citation omitted). Once the plaintiff establishes her prima facie case, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473,

484 (5th Cir. 2008). "After the employer states its [non-retaliatory] reason, the burden shifts back to the employee to demonstrate the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist v. La., Dept. of Justice, Office of Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (cleaned up) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349 (2013)).

The evidence leaves no room for dispute regarding the elements of Plaintiff's prima facie case. Ms. Wiley participated in a protected activity by filing an EEOC Charge. *Sanders v. Sailormen, Inc.*, No. 3:10-CV606, 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012) (citation omitted); *Finnie v. Lee Cty., Miss.*, 907 F. Supp. 2d 750, 788 (N.D. Miss. 2012) ("Plaintiff's filing of an EEOC charge constitutes protected activity under Title VII."). Ms. Wiley's termination was an obvious adverse employment action. *Sanders*, 2012 WL 663021, at *3 (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)). And merely one month passed between the time Centene discovered Ms. Wiley's second EEOC Charge and Ms. Wiley's termination. *See Garcia v. Prof. Contract Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) ("[T]he prima facie case's causation requirement could be satisfied by showing 'close timing between an employee's protected activity and an adverse action against him.'") (quoting *Feist*, 730 F.3d at 454); *Outley v. Luke & Assoc.*, Inc., 840 F.3d 212, 219 (5th Cir. 2016) ("[T]he close timing between her protected activity and the denial of a raise—about two months—is sufficient to show causal connection for purposes of a prima facie case."). Plaintiff has established her prima facie case.

Centene offered a legitimate, non-retaliatory reason for Ms. Wiley's termination: three consecutive "no-call/no-show" days, which Centene considered "job abandonment." Docket

4

No. 36 at 11. *See also* Docket No. 38-6 at 2 (Centene 30(b)(6) Dep. Tr. at 5:17-20) ("Her employment was ended because of three no call, no show consecutive days that in accordance with our attendance policy, that's a terminable offense.").

Although close timing between the protected activity and adverse employment action is enough to establish a prima facie case, taken alone it is insufficient to rebut a legitimate non-retaliatory reason. *Aryain*, 534 F.3d at 487 ("[T]emporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason."); *Outley*, 840 F.3d at 220 (citing same). In addition to the close timing, however, Ms. Wiley has provided further evidence casting doubt on the veracity of Centene's proffered reason for termination.

To meet her burden of demonstrating that Centene's proffered non-retaliatory reason is mere pretext for retaliation, Plaintiff offers evidence that Centene's reason is false. *Finnie*, 907 F. Supp. 2d 750 (noting that plaintiff could survive summary judgment by "offer[ing] evidence that [] the defendant's reason is not true, but is instead a pretext for retaliation[.]"). She points to evidence that tends to show she had not abandoned her job.

Centene asserted that it determined job abandonment occurred, because Ms. Wiley had not been online, logged into Centene's VPN, or used company software iCERTIS from September 21, 2023, through the 23rd, reflecting three consecutive days of "no-call/no-show." Ms. Wiley, however, identified evidence that could show that she was online, for at least a portion of those days. Docket No. 38-5 (Last Chance Agreement at Centene 92) (noting Ms. Wiley logged on during September 21, 2023). She testified that she had in fact worked during those days. Docket No. 35-2 at 31. Ms. Wiley offered evidence that she worked offline during those days, and that she had worked offline as a regular part of her employment with

5

Centene and had never had any issues with her supervisor before August of 2023 for being offline at times throughout the workday. Docket No. 38-16 at 2 (Wiley Affidavit) ("I was able to work offline on Medicaid expansion or single case agreements for providers."); *id.* ("Throughout my time at Centene as a remote employee, I worked offline as a regular part of my employment and was never disciplined or counseled by Ms. Williamson before August 2025 [sic] for being offline at times throughout the workday."). And she identified testimony showing that Centene's 30(b)(6) representative was unaware of whether Ms. Wiley had been working offline. Docket No. 38-6 at 10-11 ("Was she doing work offline? I don't know the answer to that."). Plaintiff identified sufficient evidence to call into question the veracity of Centene's proffered reason for termination. *See, e.g., Flood v. Bank of Am. Corp.*, 780 F. 3d 1, 9 (1st Cir. 2015) ("There is sufficient evidence for a reasonable fact-finder to conclude that the Bank knew Flood had not abandoned her job.").

This evidence, taken together with the one month that elapsed between Centene learning of Ms. Wiley's second EEOC Charge and her termination, could allow a reasonable fact-finder to conclude that Centene's proffered reason was pretext for retaliation. She has met her burdens. Her retaliation claim survives.

### 2. Race Discrimination

Courts review claims of racial discrimination under Title VII and 42 U.S.C. § 1981 "under the same rubric of analysis." *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019) (quotation marks and citation omitted). "The Supreme Court has held that the burden-shifting framework developed in the context of Title VII in *McDonnel Douglas*, also applies to claims of racial discrimination under § 1981." *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (cleaned up) (citation omitted). To make a prima

6

facie case of racial discrimination, Plaintiff must demonstrate that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (quotation marks and citation omitted).

In response to Centene's motion for summary judgment on her claims of racial discrimination, Ms. Wiley pointed only to the evidence she identified in support of her retaliation claim. She has failed to satisfy the fourth prong of her prima facie case, as she has not identified any evidence that she was replaced by someone outside her protected class or that she was treated less favorably than other similarly situated employees outside her protected class. Summary judgment in Centene's favor is appropriate on these claims.

### 3. Disability discrimination

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). "When a plaintiff can offer only circumstantial evidence to prove a violation of the ADA the court should apply the burden-shifting framework established in *McDonnell Douglas*." *Barnes v. N. Miss. Med. Ctr., Inc.*, No. 1:19-CV-7, 2020 WL 3472917, at *3 (N.D. Miss. June 25, 2020) (citing *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)). "The plaintiff must first make a prima facie showing of discrimination by proving that she: (1) had a disability; (2) was qualified for the job; and (3) was subject to an adverse employment decision because of her disability." *Id.* (citing *LHC*

7

*Grp., Inc.*, 773 F.3d at 697). Rather than showing an actual disability, a plaintiff can also show that she was "regarded as disabled." *Id.* (citing 42 U.S.C. § 12102(1) (2008)).

Ms. Wiley asserts a "regarded as" claim under the ADA. She has not, however, presented evidence tending to show that anyone at Centene regarded her as suffering from any disability. The evidence she identifies is speculative at best. She has failed to support her prima facie case. Summary judgment in favor of Centene is warranted on this claim.

### 4. Emotional Distress

Plaintiff asserts claims for negligent and intentional infliction of emotional distress. Her claim for negligent infliction of emotional distress is barred by the exclusive remedy provision of the Mississippi Workers' Compensation Law. *See, e.g.*, *Williams v. Lowe's Home Ctrs., Inc.*, No. 1:05-CV-111, 2007 WL 391567, at *4 (S.D. Miss. Jan. 31, 2007) ("Mississippi jurisprudence disallows Plaintiff's negligence claim as it relates to his employment.") (collecting cases). Summary judgment is granted in favor of Centene on this claim.

Plaintiff's claim of intentional infliction of emotional distress also fails. "To justify a finding that this tort has occurred, the defendant's conduct must be wanton and wilful and it would evoke outrage or revulsion." *Speed v. Scott*, 787 So.2d 626, 630 (Miss. 2001) (quotation marks and citation omitted). "A Mississippi federal court defined the necessary severity as acts 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)).

Ms. Wiley has not identified any evidence that tends to show outrageous and extreme conduct by anyone at Centene to a degree as to go beyond all possible bounds of decency. Instead, Plaintiff has identified an employment discrimination dispute in support of this

claim. *See Gardner v. Swedish Match N. Am.*, No. 2:04-CV-337, 2006 WL 2483240, at *4 (S.D. Miss. Aug. 28, 2006) ("Mere employment disputes are not actionable through intentional infliction of emotional distress claims, including unfair criticism of job performance, poor evaluation, demands that employee quit or face termination based on fabricated reasons, harassment and termination."); *Williams v. Lowe's Home Ctrs., Inc.*, No. 1:05-CV-111, 2007 WL 391567, at *3 (S.D. Miss. Jan. 31, 2007) (same). Centene is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

## Conclusion

The Court finds that a genuine issue of material fact exists as to Ms. Wiley's claim for retaliation under Title VII, which precludes judgment as a matter of law. The Court further finds that Ms. Wiley has failed to produce evidence sufficient to support essential elements of her claims of race discrimination, disability discrimination, or emotional distress. Therefore, summary judgment is granted on those claims.

**SO ORDERED**, this the 26th day of January 2026.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE